UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  18-12667 |
| | ) | |
| ST. BERNARD PARISH, LOUISIANA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America alleges as follows:

## I.   INTRODUCTION

1.      The United States brings this action for declaratory and injunctive relief, monetary damages, and civil penalties against St. Bernard Parish (the "Parish" or "St. Bernard") to enforce the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601–3631. The Parish has violated the FHA and failed to provide a reasonable accommodation to its zoning ordinance by repeatedly refusing to allow two proposed group homes for children with disabilities located at 3408 Angelique Drive, Violet, and 3008 Rosetta Drive, Chalmette to operate. Furthermore, the Parish has taken these actions even though the owners of the proposed group homes have satisfied all relevant licensing requirements of the State of Louisiana (the "State" or "Louisiana") and although the Parish's own Department of Community Development has determined that the homes would not have any adverse effect on their respective neighborhoods. On June 9, 2017, Dionna Richardson and Cathy Moore, the owners of the proposed group homes, timely filed a complaint with the United States Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 3610(a), alleging that, through its actions, the

Parish discriminated based on disability in violation of the FHA. Pursuant to 42 U.S.C. §§ 3610(g)(2)(C) and 3614(b)(1)(B), HUD referred Ms. Richardson's and Ms. Moore's complaint to the United States Department of Justice on February 21, 2018.

## II.      JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a), (b), and (d); and 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims alleged herein occurred in this district and because the Defendant is located there.

## III.      DEFENDANT

4.      Defendant St. Bernard Parish is a local governmental subdivision located within the Eastern District of Louisiana. St. Bernard Parish operates under a Home Rule Charter. The Parish has the capacity to sue and be sued.

5.      St. Bernard Parish is governed by the seven-member Council and the Parish President. Five council members represent districts of the Parish and two are elected at-large. The Parish President is elected at-large and oversees the executive functions of the Parish.

6.      Pursuant to the authority granted to it by the State of Louisiana, the Parish exercises zoning authority over land within its borders. The St. Bernard Parish Council ("Council"), the St. Bernard Department of Community Development ("Department of Community Development"), the St. Bernard Planning Commission ("Planning Commission"), and the St. Bernard Board of Zoning Adjustments ("BZA") all participate in administering  the Parish's Zoning Ordinance.

## IV. ALLEGATIONS RELATED TO DEFENDANT'S DISCRIMINATION

### A. Group Homes In Louisiana for Persons Under 21 with Disabilities

7.     Louisiana provides community-based residential services to persons under the age of 21 who need psychiatric or psychological services through Therapeutic Group Homes ("TGHs"), a type of group home for persons with disabilities. *See* LA. ADMIN. CODE, tit. 48, § 6201(B). "To ensure a more home-like setting," the State requires that TGHs "be located in a residential community to facilitate community integration through public education, recreation and maintenance of family connections . . . ." *Id.* § 6285. The "living setting" of TGHs "shall more closely resemble normal family existence than would be possible in a larger facility or institution." *Id.*

8.     The State, through the Louisiana Department of Health, regulates, licenses, and oversees TGHs. *Id.* § 6207(A). This oversight includes a licensure process and required compliance with various regulations, including regulations related to property conditions, resident care, and staff qualifications. *Id.* §§ 6207, 6209. TGHs must have a psychiatrist or a psychologist as a supervising practitioner. *Id.* § 6249. Additionally, there must be two staff on duty at TGHs at all times residents are present in the homes. *Id.* § 6247.

9.     TGHs "deliver an array of clinical treatment and related services, including psychiatric supports, integration with community resources, and skill building taught within the context of a safe home-like setting under the supervision of a professional staff person." *Id.* § 6201. Residents of a TGH require supportive services related to their disabilities. The State, through Medicaid, refers people with disabilities to TGHs as prospective residents. *See id.* § 6259.

10.     There is a shortage of residential treatment options, including TGHs, for people with psychiatric or psychological disabilities in the State. According to the Louisiana Department

of Health's website, there are currently only 13 TGHs operating in the entire State. There are families in Louisiana who are unable to find a home with supportive services for their children with disabilities. Other families have moved out of Louisiana because they have been unable to find residential treatment options for their children with disabilities in the State.

11.     Group homes in St. Bernard, including TGHs, are subject to the Parish's zoning authority.

**B.     Proposed Group Homes at 3408 Angelique Drive, Violet and 3008 Rosetta Drive, Chalmette**

12.     Dionna Richardson seeks to open a TGH to house five children between the ages of 13 and 17 with mental and emotional disabilities in a home located at 3408 Angelique Drive in Violet, Louisiana. The three-bedroom, single-family home is located in an R-1 Single Family residential zoning district within St. Bernard Parish. Ms. Richardson owns the home and formed Angelicare, LLC ("Angelicare") in order to operate a group home for children with disabilities.

13.     On December 7, 2015, Ms. Richardson applied to the State for a license to operate a TGH at the home located at 3408 Angelique Drive.

14.     Cathy Moore seeks to open a TGH to house five children between the ages of 13 and 17 with mental and emotional disabilities in a home located at 3008 Rosetta Drive in Chalmette, Louisiana. The three-bedroom, single-family home is located in an R-1 Single Family residential zoning district within St. Bernard Parish. Ms. Moore owns the home and formed C. Moore, LLC ("C. Moore") in order to operate a group home for children with disabilities.

15.     On March 11, 2016, Ms. Moore applied to the State for a license to operate a TGH at the home located at 3008 Rosetta Drive.

16.     In or around early 2016, Ms. Richardson and Ms. Moore began to take the steps necessary to comply with the State's requirements for TGHs, including by making necessary

4

modifications to their homes. Ms. Richardson and Ms. Moore sought and obtained building permits from the Parish for prefabricated structures placed on their properties, for use as office and meeting space.

17.     Other owners of properties located in R-1 Single Family zoning districts in the Parish have also added prefabricated structures that are not substantially different from those that Ms. Richardson and Ms. Moore added to their properties.

18.     The Angelicare home does not appear outwardly different from other homes on the block. The house is well-maintained. It will not generate significantly more traffic or cars than other homes in the neighborhood. The residents themselves will not drive, and there will typically be between one and three vehicles at the home. The home has adequate space for vehicle parking. The home is consistent with other land uses in the surrounding area.

19.     The C. Moore home does not appear outwardly different from other homes on the block. The house is well-maintained. It will not generate significantly more traffic or cars than other homes in the neighborhood. The residents themselves will not drive, and there will typically be between one and three vehicles at the home. The home has adequate space for vehicle parking. The home is consistent with other land uses in the surrounding area.

20.     Per the State's regulations, the Angelicare and C. Moore homes can accommodate five persons with disabilities. Ms. Richardson and Ms. Moore determined that five residents were necessary to generate sufficient income to maintain the operation of the homes.

21.     Ms. Richardson and Ms. Moore have completed all of the State's licensing requirements. The State would permit Angelicare and C. Moore to open TGHs but for the Parish's application of its Zoning Ordinance and zoning and land use practices.

22.     Because of the Parish's Zoning Ordinance and zoning and land use practices, neither Angelicare nor C. Moore are currently housing children with disabilities.

**C.      The Parish's Enforcement of its Zoning Ordinance Against Angelicare and C. Moore**

23.     At the time Ms. Richardson and Ms. Moore applied to the State for licenses to operate TGHs, the Parish's Zoning Ordinance did not define or otherwise place restrictions or requirements on "group homes".

24.     On April 12, 2016, the Parish issued cease and desist orders to Ms. Richardson and Ms. Moore, citing them for using a single-family home in the R-1 Single Family zoning district for commercial activities, lacking a zoning compliance letter from St. Bernard's Department of Community Development for operation of a business, lacking a zoning permit for operating a business, and lacking an occupational license for operating a business.

25.     At a subsequent meeting in or around April 2016, the Parish informed Ms. Richardson and Ms. Moore that group homes were not permitted in the R-1 Single Family zoning district and instructed Ms. Richardson and Ms. Moore to apply for a rezoning to the R-2 Two-Family zoning district and a conditional use permit in order to operate their homes.

26.     On May 23, 2016, in an attempt to operate Angelicare and following the Parish's advice, Ms. Richardson submitted a zoning change application to the Parish.

27.     On May 24, 2016, in an attempt to operate C. Moore and following the Parish's advice, Ms. Moore submitted a zoning change application to the Parish.

**D.      Zoning and Land Use in the Parish**

28.     On June 21, 2016, prior to issuing a decision on Ms. Richardson's and Ms. Moore's zoning change applications, the Parish changed its Zoning Ordinance to restrict group homes in

residential zoning districts and impose parking requirements on group homes that are more onerous than the parking requirements for other homes.

29.     As of June 21, 2016, the Parish's Zoning Ordinance defines a "group home" as "[a] group care facility in a residential dwelling, licensed by the state, for twenty-four-hour medical or non-medical care of persons in need of personal services, supervision, or assistance essential for sustaining the activities of daily living, or for the protection of the individual." St. Bernard Parish, La., Code of Ordinances 22-2-4 (Jun. 21, 2016). Under the Parish's Zoning Ordinance, small group homes operate with six or fewer residents, large group homes operate with between seven and fifteen residents, and congregate group homes operate with sixteen or more residents. *Id.* The Parish's Zoning Ordinance prohibits all group homes from locating in the R-1 Single Family zoning district. St. Bernard Parish, La., Code of Ordinances 22-5-4 (Jun. 21, 2016). Small group homes are permitted as conditional use in the R-2 Two-Family zoning district, where large and congregate group homes are prohibited. *Id.* Small and large group homes are permitted in the R-3 Multi-Family zoning district, where congregate group homes are permitted as conditional use. *Id.* Additionally, the Parish's Zoning Ordinance requires all group homes to have three parking spaces per 1,000 square feet, but requires other homes to have only two parking spaces per home. St. Bernard Parish, La., Code of Ordinances 22-7-3.2 (Jun. 21, 2016).

30.     Over 75 percent of the residential parcels of property in St. Bernard are located in R-1 Single Family zoning districts.

31.     St. Bernard's restrictions and requirements on group homes potentially render numerous homes and multiple residential blocks unavailable to persons with disabilities who require the supports and services of a group home to live in the community.

32.     The Parish's Zoning Ordinance allows four unrelated persons to live together as a family in all residential zones. Specifically, the Ordinance limits occupancy in R-1 districts to a single "family", which it defines as:

> One (1) or **two (2) individuals** or parents, with their direct lineal descendants and adopted or legally cared for children (and including domestic employees thereof) **together with not more than two (2) individuals not so related**, living together in the whole or part of a dwelling comprising a single housekeeping unit. Every additional group of four (4) or fewer individuals living in such housekeeping unit shall be considered a separate family for the purpose of this chapter.

St. Bernard Parish, La., Code of Ordinances 22-2-4 (emphasis added).

33.     The Parish's Zoning Ordinance also permits an unlimited number of unrelated persons to reside in an R-1 Single Family zoning district if those persons are the "domestic employees" of "[o]ne (1) or two (2) individuals or parents, with their direct lineal descendants and adopted or legally cared for children." *Id.*

34.     The Parish's Zoning Ordinance permits home occupations in all residential districts. The Parish's Zoning Ordinance defines "home occupation" as "any allowed activity requiring a business license that is conducted within a residential dwelling by one (1) or more residents thereof for the purpose of generating income. It is an accessory, secondary use that is strictly incidental to the residential use of the dwelling." *Id.*

35.     The Parish's Zoning Ordinance permits adult and child day care homes for up to six people in R-1 Single Family zoning districts. Schools, child care centers, and community centers are permitted as conditional uses in R-1 Single Family zoning districts. St. Bernard Parish, La., Code of Ordinances 22-5-4.

36.     The Parish's Zoning Ordinance permits homeowners in R-1 Single Family zoning districts to rent their homes provided they obtain a permissive use permit. St. Bernard Parish, La., Code of Ordinances 14-14. The Parish has granted such permissive use permits. For example,

records maintained by the Parish show that the Parish granted approximately 61 such permits in 2009.

37.     Angelicare's and C. Moore's impact on neighborhoods zoned as R-1 Single Family would not be substantially different from, and in some cases would be less than, that of uses the Parish permits in R-1 Single Family zoning districts, including home occupations, day care homes, schools, child care centers, community centers, and rental properties.

38.     The Parish has previously granted requests to change the zoning designation of properties zoned as R-1 Single Family. For example, between 2015 and 2017, the Parish granted approximately eight such requests. Three of those approved changes allowed for the operation of businesses in R-1 Single Family districts, including a used automotive sales lot, a photography studio, and a business office for an air-conditioning and heating company.

**E.     The Parish's Denial of Ms. Richardson's and Ms. Moore's Zoning Change Requests**

39.     On June 28, 2016, the Parish Planning Commission held a hearing with public comment on Angelicare and C. Moore, but tabled the applications in order to gather additional information.

40.     On July 26, 2016, the Department of Community Development submitted Zoning Change Reports to the Planning Commission, concluding that Angelicare and C. Moore would not "generate additional traffic demands," would not cause "significant inconvenience to area residences," would not "negatively impact" "public health, safety, and welfare," and would not cause "significant environmental or operational impacts to adjacent and surrounding residential developments." The Zoning Change Reports also stated that "adequate infrastructure is in place" for the group homes and that there were "no natural resource conservation issues." The Zoning Change Reports made no recommendation on the zoning change applications, reasoning that the

requests "could be addressed by means of reasonable accommodations of group homes for the treatment of people with disabilities in lieu of a zoning change."

41.     On July 26, 2016, the Planning Commission held a second meeting with public comment on Angelicare and C. Moore. Employees of Angelicare and C. Moore provided detailed information about the types of residents the homes would house, staff qualifications, and how the children would be referred and supervised. Commissioner Dauterive stated that the group homes should find property in the R-2 Two-Family residential zoning district or R-3 Multi-Family residential zoning district because they had "to consider other people's feelings and other people's financial situations." Dale Thayer, the Assistant Director of the Parish's Planning and Zoning Division, informed the Planning Commission that "if [the group homes] are intending to serve folks with a disability under the ADA, we would be required to reasonably accommodate that service" and that "a six or less [person group home] would be [reasonable]."  However, Jason Stopa, the Director of Community Development, stated that the Parish's Zoning Ordinance did not have any provisions allowing the Parish to grant reasonable accommodations. Members of the public spoke for and against the group homes at this meeting. Members of the public opposed to the group homes raised concerns about the commercial nature of the group homes and the possibility that future businesses would be allowed in R-1 Single Family zoning districts. The Planning Commission then voted to recommend denial of the zoning applications to the Council.

42.     On August 2, 2016, the Council held a hearing with public comment on Angelicare and C. Moore. An attorney for the homes provided the Council with information about the FHA, the Americans with Disabilities Act, and State regulations regarding TGHs. He explained that the FHA required the Parish to make reasonable accommodations. Employees of Angelicare and C. Moore explained that the homes would house children with mental disabilities and would be

referred by the State. The Council voted to introduce the zoning request for an August 16, 2016 vote.

43.     On August 16, 2016, the Council held a second hearing with public comment on Angelicare and C. Moore. Members of the public spoke for and against the group homes. Members of the public opposed to the group homes cited concerns about property values and spot zoning. The Council voted to table the applications after Councilman Lewis stated that "if the information provided shows that this is a true therapeutic or mental disabled facility, fair housing is going to allow it in an R-1 zone, and [rezoning the properties to] R-2 is not going to matter."

44.     On September 20, 2016, the Council held a third hearing with public comment on Angelicare and C. Moore. Staff for the homes described the services that they would offer and reviewed some of the most common types of disabilities that residents might have. Ms. Richardson described that the FHA requires reasonable accommodations. Members of the public spoke for and against the zoning change applications. Members of the public opposed to the zoning change applications focused on concerns that approving the applications would open the door to other rezonings. One resident noted the "big, blue handicapped sign painted on the driveway" of one of the TGHs, remarking that "you don't see those on driveways in single family homes," and concluding that "this TGH has nothing in common with any single family residential house in this neighborhood."

45.     On September 20, 2016, the Council voted to deny Ms. Richardson's and Ms. Moore's zoning change applications. Explaining his vote against the applications, Councilman Gorbaty stated that "the people have come out and spoken. . . . when residents come to speak about it we really take that to heart because it shows that they care about it. You'd feel the same way about what's infiltrating into your neighborhood."

46. Aside from the opportunity to apply for a rezoning, which the Council denied on September 20, 2016, the Parish never offered to Ms. Richardson or Ms. Moore an alternative accommodation that would allow them to operate State-licensed TGHs.

F. **The Parish's Denial of Reasonable Accommodations**

47. On October 6, 2016, Ms. Richardson and Ms. Moore each requested a reasonable accommodation to operate their homes. The Parish did not have a reasonable accommodation policy in place at that time. The Parish never granted or denied these reasonable accommodation requests.

48. On November 2, 2016, the Parish adopted a reasonable accommodation ordinance, specifying that applications for reasonable accommodations are filed with the Department of Community Development and that decisions on applications can be appealed to the BZA.

49. On November 28, 2016, Ms. Richardson and Ms. Moore submitted applications for a reasonable accommodation pursuant to the reasonable accommodation ordinance, explaining that they needed zoning relief to operate group homes for children with disabilities.

50. On December 2, 2016, the Department of Community Development denied the reasonable accommodation requests by letter, determining that Ms. Richardson and Ms. Moore: (1) had not "provided evidence" that the residents of the homes had disabilities, (2) that there was "not a connection between the stated disability and the major life activity [] substantially affected," and (3) that there was no "clear connection" that the residents were "deemed to have a disability that affects one or more major life activity."

51. The Parish did not ask Ms. Richardson or Ms. Moore for additional information prior to denying their reasonable accommodation requests.

52.     On December 9, 2016, Ms. Richardson and Ms. Moore appealed the denial of their reasonable accommodation requests to the BZA pursuant to the reasonable accommodation ordinance.

53.     On January 5, 2017, the BZA heard the appeals, with a period for public comment. During this hearing, staff of the homes provided information on staff qualifications and responsibilities, and the types of disabilities that the homes would serve. They also informed the BZA that they would address the reasons for the denial of the reasonable accommodation requests as stated in the December 2, 2016 denials by creating a detailed procedure to document resident disabilities and allow for Parish inspection of redacted resident files. The BZA tabled the appeals for 30 days.

54.     On February 2, 2017, the BZA held a second hearing on the reasonable accommodation requests. Without citing any evidence and contrary to the conclusions of the Department of Community Development's Zoning Change Reports, discussed above, BZA chair Karen Sweeney commented that the group homes would generate "a lot of vehicles . . . twenty-four [hours a day], seven [days a week]" and stated that more information was necessary on the children's disabilities. She further stated that while applicable law required that the Parish allow group homes to locate in residential areas, the law did not specify that they must be allowed in R-1 Single Family zoning districts, concluding that "this request seems more of a convenience for these business owners . . . It's not really beneficial to the neighborhoods or to the children that are going to be living there." Another BZA member stated that the group homes "or whatever you want to call it" could have been located in a different residential zoning district.

55.     On February 2, 2017, the BZA voted to deny the appeals of the reasonable accommodation denials.

**G.      Ms.  Richardson and Ms. Moore File Complaints with HUD**

56.    On June 9, 2017, Ms. Richardson and Ms. Moore timely filed a complaint with HUD pursuant to 42 U.S.C. § 3610(a), alleging that, through its actions, the Parish discriminated based on disability in violation of the FHA.

57.    On February 21, 2018, HUD referred Ms. Richardson's and Ms. Moore's complaint to the United States Department of Justice for appropriate action, pursuant to 42 U.S.C. § 3610(g)(2)(C).

**H.      Ms. Richardson's and Ms. Moore's  Subsequent Efforts to Open their Homes**

58.    On August 1, 2017, Ms. Richardson and Ms. Moore filed suit against the Parish in federal court, alleging that, through its actions, the Parish discriminated based on disability.

59.    On September 29, 2017, Ms. Richardson and Ms. Moore sent correspondence to the Parish notifying the Parish that they intended to open their homes with four persons during the pendency of their lawsuit, the number of unrelated people permitted to live together as a family under the Parish Zoning Ordinance. The Parish never responded to this letter.

60.    On April 23, 2018, Ms. Richardson obtained a license from the State to operate a TGH for four children with disabilities at 3408 Angelique Drive. The State agreed to issue a license to Ms. Richardson to operate a TGH for five children with disabilities if the Parish allowed her to do so under its Zoning Ordinance.

61.    On May 2, 2018, Ms. Moore obtained a license from the State to operate a TGH for four children with disabilities at 3008 Rosetta Drive. The State agreed to issue a license to Ms. Moore to operate a TGH for five children with disabilities if the Parish allowed her to do so under its Zoning Ordinance.

62.     On May 14, 2018, following the instructions of the Parish, Ms. Richardson and Ms. Moore each submitted an Application to Obtain General Clearance, Zoning Compliance Letter for Business License in order to operate Angelicare and C. Moore with four children.

63.     On May 23, 2018, the Parish denied Ms. Richardson's and Ms. Moore's Application to Obtain General Clearance, Zoning Compliance Letter for Business License to open Angelicare and C. Moore with four children because the Zoning Ordinance did not allow the operation of group homes in an R-1 Single Family zoning district.

## V.  CLAIMS FOR RELIEF

### Count I: Violations of the Fair Housing Act

64.     The allegations listed above are incorporated herein by reference.

65.     The proposed group homes at 3408 Angelique Drive, Violet, and 3008 Rosetta Drive, Chalmette, are "dwellings" within the meaning of 42 U.S.C. § 3602(b). The residents of these homes are persons with disabilities within the meaning of 42 U.S.C. § 3602(h).[1]

66.     Defendant St. Bernard Parish's actions described above constitute:

    a.     discrimination in the sale or rental, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1);

---

[1] Throughout this Complaint, the United States uses the term "disability" instead of "handicap." For purposes of the Act, the terms have the same meaning. *See Helen L. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir.) ("The change in nomenclature from 'handicap' to 'disability' reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable."), *cert. denied sub nom. Pa. Sec'y of Pub. Welfare v. Idell S.*, 516 U.S. 813 (1995).

      b.   discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

      c.   a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B).

67.    Defendant has acted intentionally, willfully, and in disregard for the rights of others.

68.    The FHA provides alternative bases under which the Attorney General may sue to enforce the statute. *See* 42 U.S.C. § 3614; 42 U.S.C. § 3612(o). Defendant's actions as described above provide three alternative grounds upon which the Attorney General may bring suit, any one of which is a sufficient basis for this lawsuit. Defendant's actions constitute:

      a.   a denial of rights protected by the Fair Housing Act to a group of persons, which denial raises an issue of general public importance, under 42 U.S.C. § 3614(a);

      b.   a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, under  42 U.S.C. § 3614(a); and/or

      c.   a discriminatory housing practice, which the Secretary of HUD has referred to the Attorney General pursuant to 42 U.S.C. § 3610(g) and for which the Attorney General may seek relief, under 42 U.S.C. § 3614(b).

69.    Ms. Richardson and Ms. Moore and other persons and/or agencies who may have been the victims of Defendant's discriminatory conduct are "aggrieved persons" within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B), and have suffered harm and damages as a result of Defendant's conduct.

WHEREFORE, the United States prays that the Court enter an order:

      a.     Declaring that the Defendant's actions violate the Fair Housing Act;

      b.     Ordering the Defendant to bring its policies, including its zoning ordinance, into compliance with the Fair Housing Act;

      c.     Ordering the Defendant to take all affirmative steps to ensure its compliance with the Fair Housing Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of their unlawful housing practices as described herein;

      d.     Ordering the Defendant to take all affirmative steps to restore, as nearly as practicable, the victims of the Defendant's unlawful practices to the position they would have been in but for the Defendant's discriminatory conduct;

      e.     Awarding monetary damages, pursuant to 42 U.S.C. § 3614(d)(1)(B), to all aggrieved persons; and

      f.     Assessing a civil penalty against the Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated December 6, 2018.

                                                   Respectfully submitted,

PETER G. STRASSER

United States Attorney

Eastern District of Louisiana

                                                   MATTHEW G. WHITAKER

                                                   Acting Attorney General

/s/ David Howard Sinkman

DAVID HOWARD SINKMAN

Assistant United States Attorney

United States Attorney's Office

Eastern District of Louisiana

650 Poydras St., Suite 1600

New Orleans, LA 70130

Tel: (504) 680-3059

Email: David.Sinkman@usdoj.gov

                                                   /s/ Eric S. Dreiband

                                                   ERIC S. DREIBAND

                                                   Assistant Attorney General

                                                   Civil Rights Division

                                                   /s/ Sameena S. Majeed

                                                   SAMEENA SHINA MAJEED

                                                   Chief, Housing and Civil Enforcement Section

                                                   /s/ Katharine F. Towt

                                                   TIMOTHY MORAN

                                                   Deputy Chief

                                                   KATHARINE F. TOWT

                                                   Attorney

                                                   United States Department of Justice

                                                   Housing and Civil Enforcement Section

                                                   Civil Rights Division

                                                   950 Pennsylvania Ave. NW – G St.

                                                   Washington, DC  20530

                                                   Tel:  (202) 514-4713

                                                   Fax:  (202) 514-1116

                                                   Email:  katie.towt@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katharine F. Towt, US DOJ, (202) 353-4140; David Howard Sinkman, USAO, (504) 680-3000

## DEFENDANTS

St. Bernard Parish, Louisiana

County of Residence of First Listed Defendant   St. Bernard Parish
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
James Garner, Debra Fischman, David Freedman

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
        Plaintiff

☐ 2   U.S. Government
        Defendant

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation -
       Transfer

☐ 8  Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 3601 3631
Brief description of cause:
Failure to provide a reasonable accommodation to zoning laws for individuals with disabilities

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE  Jay C. Zainey

DOCKET NUMBER  2:17-cv-07360-JCZ-JVM

DATE
12/06/2018

SIGNATURE OF ATTORNEY OF RECORD
/s/ David Howard Sinkman

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____